BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General, Civil Division
E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS, AUSA
Chief, Civil Division
ROSS M. CUFF, AUSA
Chief, Civil Fraud Section
FRANK D. KORTUM, AUSA
California State Bar No. 110984
    Room 7516, Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Tel: (213) 894-6841; Fax: (213) 894-7819
    E-mail:  frank.kortum@usdoj.gov
JAMIE ANN YAVELBERG
COLIN M. HUNTLEY
JARED S. WIESNER
Attorneys, Civil Division
United States Department of Justice
    P.O. Box 261, Ben Franklin Station
    Washington, D.C. 20044
    Tel: (202) 353-1274
    Fax: (202) 616-3085
    Email: jared.s.wiesner2@usdoj.gov
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. BRYAN QUESENBERRY,<br><br>Plaintiff,<br><br>v.<br><br>JMG INVESTMENTS, INC., AND JEFFREY SCHWARTZ,<br><br>Defendants. | CASE NO. CV 20-08497 MWF (ASx)<br><br>UNITED STATES' COMPLAINT IN INTERVENTION<br><br>JURY DEMAND |

1

## INTRODUCTION

1.     The United States brings this action for damages and statutory penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and the common law, including equitable theories of unjust enrichment and payment by mistake, in connection with a federally guaranteed Paycheck Protection Program loan improperly obtained and retained by JMG Investments, Inc. ("JMG") and its owner Jeffrey Schwartz ("Schwartz").

2.     JMG and Schwartz, collectively referred to herein as "the Defendants," made false or fraudulent statements and caused false claims to be submitted to the United States in an effort to obtain a federally guaranteed PPP loan.  Specifically, the Defendants improperly obtained and retained, a second, duplicate PPP loan prior to December 31, 2020, despite the fact that Defendants knew JMG was permitted to receive only one PPP loan prior to December 31, 2020.  As a result, the Defendants caused the United States Small Business Administration ("SBA") to pay Federal funds to a financial institution that disbursed the improper, duplicate loan to JMG.  If the Defendants had truthfully stated that JMG intended to receive and retain two PPP loans prior to December 31, 2020, JMG never would have received the improper duplicate loan.  Defendants' false statements and improper retention of the duplicate PPP loan caused the United States to pay lender processing fees of $15,047 and forgive the improper duplicate PPP loan in the amount of a $501,588, causing the United States to sustain a total loss of $516,635.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the United States' claims brought under the FCA, 31 U.S.C. §§ 3279, *et seq.*, pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

4.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because (A) at all times material hereto JMG transacted business in the Central

District of California; and (B) individual defendant Schwartz resided in the Central District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

5.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a) because (A) JMG can be found in the Central District of California; and (B) individual defendant Schwartz resided within the Central District of California.  Furthermore, acts that form the basis of this Complaint in Intervention occurred in the Central District of California.

## PARTIES

**I.    The United States**

6.    The United States brings this action on behalf of the SBA.  The SBA is the federal agency that administers the PPP.

**II.    Relator**

7.    Bryan Quesenberry ("Relator") is a resident of Oregon. In his capacity as a Relator, he filed the original *qui tam* complaint in this action on behalf of the United States, the real party in interest.

**III.    Defendants**

8.    Defendant JMG is a California corporation located in Agoura Hills, California.  JMG owns multiple other corporations, including Harmony Place and Valley Restoration Center, Inc.; these corporations are wholly-owned subsidiaries of JMG and the revenue of each subsidiary is reported on JMG's tax return.  All employees of Harmony Place and Valley Restoration Center were paid by JMG and reported on JMG's employment tax returns in 2019.

9.    Defendant Schwartz is an individual residing in Woodland Hills, California, and he is the owner and manages the operations of JMG.  Schwartz completed and signed all PPP loan applications referenced in this Complaint in Intervention on behalf of JMG.

## LEGAL BACKGROUND

3

## I. The CARES Act and Paycheck Protection Program

10. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") (Pub. L. 116-136) was enacted to provide emergency assistance and health care response for individuals, families, and businesses affected by the Coronavirus Disease 2019 ("COVID-19") pandemic. Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of loans made by participating lenders under a new program titled the "Paycheck Protection Program" ("PPP"), pursuant to section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)). Section 1102(F)(ii)(I) of the CARES Act stated that all PPP lenders were deemed to have been delegated authority by the SBA Administrator to make and approve PPP loans (15 U.S.C. 636(a)(36)(F)(ii)(I)). Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

11. In order to obtain a PPP loan, a qualifying business, through its authorized representative, signed and submitted a PPP loan application to the lender with delegated authority from SBA, using SBA Form 2483 (hereafter "Application Form 2483"). Application Form 2483 required the applicant to acknowledge the PPP program rules and make certain affirmative certifications regarding program eligibility.

12. If the lender approved the borrower's application, the lender submitted information from the borrower's application to the SBA via the agency's electronic "E-Tran" processing system. E-Tran prompted the lender to enter information from Application Form 2483 into certain data fields. Based on the lender's electronic submission, the loan was assigned a loan number, and the SBA provided a loan guarantee to the lender. The lender then disbursed the loan to the borrower using its own funds and notified SBA that the loan was fully disbursed. Upon receipt of that notification, SBA paid the lender a processing fee.

13.   For 2020 PPP loans at issue here, the maximum loan amount available was the lesser of $10 million dollars or the sum of:  (1) the company's average monthly payroll costs for the one-year period before the date the loan was made, multiplied by 2.5, and (2) the outstanding amount of any Economic Injury Disaster Loan (EIDL) made between Jan. 31, 2020 and April 3, 2020.  15 U.S.C. § 636(a)(36)(E).

14.   To help ensure that as many eligible borrowers as possible could obtain PPP loans and to help advance Congress' goal of keeping workers paid and employed across the United States, an Interim Final Rule issued by SBA allowed borrowers to receive only one PPP loan during 2020.  *See* Small Business Administration Interim Final Rule, 85 Fed. Reg. 20811, 20813 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

15.   Regulations governing PPP loans required the eligible borrower to certify in good faith that "the eligible recipient does not have an application pending for a loan under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan."

16.   Consistent with regulations restricting borrowers to one loan per borrower, Application Form 2483 required applicants to certify, among other things, that "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."

17.   A PPP loan recipient could apply for forgiveness at any time up to the maturity date of the loan.  If borrowers did not apply for forgiveness within ten months after the maturity date, PPP loan payments were no longer deferred, and borrowers had to begin making loan payments to their PPP lender.  If a borrower's PPP loan became more than 60 days past due, the lender could request purchase of the loan by the SBA pursuant to the agency's loan guarantee.

## II.   The False Claims Act

18.   Originally enacted in the 1863 to combat fraud against the Union Army during the Civil War, the False Claims Act is the primary tool with which the United States combats fraud against the Government and protects the federal fisc.   The Supreme

Court has held that the FCA's provisions must be construed broadly to reach "all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).

19.     The FCA establishes liability for various forms of conduct related to the submission of a false or fraudulent claim for payment from the federal government.  The FCA imposes liability for knowingly presenting false claims for federal funds, or for causing such false claims to be presented.  31 U.S.C. § 3729(a)(1)(A).  The statute also establishes liability for knowingly making, using, or causing a false record or statement material to a false claim for federal funds.  31 U.S.C. § 3729(a)(1)(B).  Finally, the statute establishes liability for knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government.  31 U.S.C. § 3729(a)(1)(G)

20.     The terms "knowing" and "knowingly" are defined by the FCA to mean that, with respect to the subject false information, a person has actual knowledge of the falsity, acts in deliberate ignorance of the truth or falsity, or acts in reckless disregard of the truth or falsity, and proof of specific intent to defraud is not required.  31 U.S.C. § 3729(b).

21.     As defined in the FCA, the term "claim" means any request or demand for money or property that is presented or caused to be presented to the United States; or that is made to a contractor, grantee, or other recipient, if the money is to be spent or used on behalf of the Government or to advance a Government program or interest, so long as the United States provides or has provided any portion of the subject money or property or will reimburse such contractor, grantee, or other recipient for any portion of the subject money or property.  *Id.*

22.     The term "material" is defined in the FCA to mean having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.  *Id.*

23.     The FCA provides for a recovery of three times the damages sustained by the United States ("treble damages"), plus a civil penalty for each violation.  31 U.S.C. § 3729(a)(1).  Pursuant to the Bipartisan Budget Act of 2015, all civil statutory penalties, including those set forth in the FCA, are required to be adjusted annually for inflation.  *See* Pub. Law. No. 114-74, § 701, 129 Stat. 584, 599.  At this time, FCA penalties assessed after February 12, 2024, whose associated violations occurred after November 2, 2015, are no less than $13,946 and no more than $27,894 for each violation.  *See* 28 C.F.R. § 85.5 (Adjustments to penalties for violations occurring after November 2, 2015).

## **DEFENDANTS' FRAUDULENT ACTIVITY**

24.     The Defendants knowingly made and caused to be presented false claims and statements to the SBA, in order to improperly obtain and retain the funds of a PPP loan administered by the SBA.  JMG improperly applied for and received two PPP loans prior to December 31, 2020, in violation of PPP rules.  Schwartz, who signed both applications on behalf of JMG, falsely certified that the company had not and would not receive a second PPP loan in 2020.  Schwartz knew that JMG was a single entity that paid salaries for all employees of JMG's subsidiaries and that JMG was not eligible to receive and retain the second, duplicate loan.

25.     On or about April 8, 2020, JMG submitted Application Form 2483 to lender Bank of America seeking a PPP loan ("BofA Loan").  Schwartz signed the loan application on behalf of JMG.  Based on this application and the eligibility certifications therein, Bank of America electronically submitted information from Application Form 2483 to the SBA.  This electronic submission caused the SBA to assign a loan number and provide a loan guarantee to Bank of America.  On or about May 15, 2020, Bank of America disbursed loan #4670757309 to JMG in the amount of $505,987.00 and notified the SBA that the loan had been funded.

26.     On or about May 7, 2020, JMG submitted Application Form 2483 to lender Fountainhead SBF seeking a PPP loan ("Fountainhead Loan").  Based on this application

and the eligibility certifications therein, Fountainhead SBF electronically submitted information from Application Form 2483 to the SBA.  This electronic submission caused the SBA to assign a loan number and provide a loan guarantee to Fountainhead SBF.  Following this loan guarantee, on or about May 22, 2020, Fountainhead SBF disbursed loan #3948257400 to JMG in the amount of $501,588 and notified the SBA that the loan had been funded.  Upon receipt of this notification, the SBA paid $15,047 in processing fees to Fountainhead SBF.

27.    The Defendants hired an agent ("Agent") to assist with the Fountainhead Loan application.  For their services, the Defendants agreed to pay the Agent a three percent "service fee" totaling $10,032.

28.    In connection with JMG's Fountainhead Loan application Schwartz was required to initial the application certifying that JMG had not received and would not receive another PPP loan in 2020.

29.    JMG listed Schwartz as the 100% owner of JMG in both applications and also confirmed that Schwartz was neither an owner of, nor did he have common management of, any other business, confirming that there was no legitimate second entity that was eligible for the second, duplicate Fountainhead Loan.

30.    Schwartz also certified that the information provided in the applications was true in all material respects and that false statements were punishable under the law.

31.    The false and fraudulent statements and claims alleged herein were material to the SBA's decision to pay processing fees and guarantee the second Fountainhead Loan.

32.    When Defendants received the disbursed funds in connection with the BofA Loan, they elected not to cancel or withdraw their application for the Fountainhead Loan, despite having expressly certified that JMG had not received and would not receive another PPP loan prior to December 31, 2020, and despite Defendants' knowledge that JMG was not permitted to receive more than one loan prior to December 31, 2020.

33. At the time that the Defendants received the disbursed funds in connection with the improper duplicate Fountainhead Loan, they knew JMG had previously certified that JMG had not received and would not receive another PPP loan prior to December 31, 2020, and despite Defendants' knowledge that JMG was not permitted to receive more than one loan prior to December 31, 2020.

34. Defendants were aware of the legal risks associated with their receipt and retention of the improper duplicate Fountainhead Loan, as well as the risk that they could be required to repay the loan. On or about June 8, 2020, Schwartz emailed the Agent regarding the "service fee" paid by Defendants in connection with the Fountainhead Loan, and in that email he acknowledged the Defendants' legal risks relating to the Fountainhead Loan and his concern about that, stating in part: "But what I am worried about is the fact that two weeks after I applied for this loan, I did, in fact, remind you via email, that I received my loan through Bank of America." In the email Schwartz proposed that the Agent return the fees paid by Defendants in connection with the duplicate loan "if, in fact, I [Schwartz] am forced to pay that loan back to SBA."

35. Despite Defendants certification that JMG would receive only one loan prior to December 31, 2020, and despite their knowledge of PPP rules prohibiting JMG from receiving more than one loan prior to December 31, 2020, and despite their understanding of the legal risks associated with their receipt and retention of this loan, Defendants knowingly and improperly retained the Fountainhead Loan.

36. On October 10, 2023, Schwartz testified under oath in response to a Civil Investigative Demand that "**Well, I knew – I knew that I was – I was only supposed to get one PPP loan.** And then all of a sudden the loan from Fountainhead came through. I wasn't expecting it because I had already received the loan from Bank of America." Schwartz also testified that the Agent told Schwartz "the loan would most likely be forgiven but if, in fact, it was not, that I would probably have to pay it back at a very low interest rate at 3 percent, 3 and a half percent and that – but she was – felt very secure

that it would get forgiven; and she wanted me to send her a check, which I did, for $10,032."

37. In or about February 9, 2021, SBA forgave the BofA Loan in its entirety.

38. Despite Defendants' understanding of PPP rules prohibiting JMG from receiving the more than one loan prior to December 31, 2020, and despite Defendants' understanding of the legal risks associated with their receipt and retention of this loan, and despite Defendants' knowledge that JMG had already received forgiveness of the BofA Loan in full, on or about July 19, 2021, Defendants applied for loan forgiveness on the improper duplicate Fountainhead Loan.

39. The loan forgiveness applications submitted by Defendants expressly warned that "The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application."  In the forgiveness application for the Fountainhead Loan, Defendants falsely certified, expressly or impliedly, that JMG was eligible for the loan, that JMG satisfied all PPP rules and requirements with regard to the loan, and that JMG was eligible for loan forgiveness in the full amount of the loan.

40. Before forgiveness could be processed on the Fountainhead Loan, however, JMG failed to make required payments and Fountainhead charged off the loan, which SBA purchased pursuant to its guaranty on or about July 2022.  During his Civil Investigative Demand testimony, Schwartz stated that:

Q.  Did you ever offer to pay back the Fountainhead loan?

A.  No.

Subsequently, SBA converted the Fountainhead Loan from a guaranty purchase to a forgiven loan.

41. As a result of JMG's fraudulent scheme and knowingly false representations of PPP eligibility, the Defendants received CARES Act funding

that they would not have received but for the false statements and knowing and improper retention of the improper, duplicate Fountainhead Loan as alleged herein.

## COUNT I
**(False Claims Act:  Presentation of False Claim for Payment)**
**(31 U.S.C. § 3729(a)(1)(A))**

42.     The United States re-alleges and incorporates in this Count I the above paragraphs of this Complaint in Intervention.

43.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented materially false or fraudulent claims for payment or approval to SBA in violation of the False Claims Act, 31 U.S.C. § 3729(a)(l)(A); that is, Defendants knowingly and falsely stated in Application Form 2483 that JMG had not and would not receive another PPP loan in 2020 and that the company was eligible under applicable rules and regulations, that resulted in SBA disbursing processing fees to the lender, guarantying the full amount of the loan, and ultimately purchasing and forgiving the improper duplicate Fountainhead Loan.  Thereafter, in the forgiveness application for the improper duplicate Fountainhead Loan, Defendants falsely certified, expressly or impliedly, that JMG was eligible for the loan, that JMG satisfied all PPP rules and requirements with regard to the loan, and that JMG was eligible for loan forgiveness in the full amount of the loan.

44.     Payment of the false and fraudulent claims was a reasonable and foreseeable consequence of Defendants' conduct.

45.     The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be submitted.

46.     The false or fraudulent representations and claims Defendants knowingly made to the United States were material to the United States' decisions to make payments to Defendants.

47.     By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

## COUNT II
### (False Claims Act:  False Records Material to a False or Fraudulent Claim) (31 U.S.C. § 3729(a)(1)(B))

48.     The United States re-alleges and incorporates in this Count II the above paragraphs of this Complaint in Intervention.

49.     By virtue of the acts described above, Defendants made, used, or caused to be made or used, false records or statements – namely, false claims and false statements in their application for the improper duplicate Fountainhead Loan in 2020 that resulted in SBA disbursing processing fees to the lender, guarantying the full amount of the loan, and ultimately purchasing and forgiving the loan – all of which were material to false or fraudulent claims that were submitted to the United States and paid and approved by SBA, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(l)(B).

50.     Defendants' false certifications and representations were made for the purpose of ensuring that the United States paid the false or fraudulent claims, which was a reasonable and foreseeable consequence of the Defendants' conduct.

51.     The United States was unaware of the falsity of the records, statements, and claims Defendants made, submitted, or caused to be made or submitted, and in reliance on the accuracy of these records or statements, the United States paid false or fraudulent claims.

52.     The false and fraudulent representations and claims Defendants knowingly made to the United States were material to the United States' decisions to make payments to Defendants.

53.     By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

## COUNT III
### (False Claims Act:  Reverse False Claim)
### (31 U.S.C. § 3729(a)(1)(G))

54.    The United States re-alleges and incorporates in this Count III the above paragraphs of this Complaint in Intervention.

55.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(G). Defendants knowingly and improperly retained the Fountainhead Loan  despite knowing JMG "was only supposed to get one PPP loan," and, thereafter, Defendants knowingly and improperly avoided their obligation to repay the Fountainhead Loan that they understood they never should have received in the first instance.

56.    By reason of the foregoing, the United States has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false and fraudulent claim.

## Count IV
### (Unjust Enrichment)

57.    The United States re-alleges and incorporates in this Count IV the above paragraphs of this Complaint in Intervention and pleads this count in the alternative.

58.    By virtue of the acts described above, defendants knowingly made materially false or fraudulent statements in violation of federal law that resulted in the United States and lenders acting on behalf of the United States paying Defendants certain sums of money.  Defendants' receipt of payments based on their false certifications are such that, in equity and good conscience, Defendants should not retain those payments.

59.    The United States has and continues to have a reasonable expectation of payment of the monies paid to Defendants based on false or fraudulent claims.

13

60. Defendants should reasonably have expected and should reasonably be expected to pay to the United States the monies paid to Defendants based on false or fraudulent claims.

61. Society's reasonable expectations of person and property would be defeated by Defendants' nonpayment to the United States of the monies paid to Defendants based on false or fraudulent claims tainted by kickbacks.

62. By reason of Defendants' acts, the United States has been damaged in an amount to be determined at trial.

### Count V
### (Payment by Mistake)

63. The United States re-alleges and incorporates in this Count V the above paragraphs of this Complaint in Intervention and pleads this count in the alternative.

64. The United States' agents paid the claims and statements Defendants submitted or caused to be submitted based upon mistaken or erroneous understandings of material fact.

65. The United States and lenders acting on the United States' behalf, acting in reasonable reliance on the accuracy and truthfulness of the information contained in Defendants' claims and statements, paid Defendants certain sums of money, in an amount to be proven at trial, to which they were not entitled, and Defendants are thus liable to account and pay such amounts to the United States

66. By reason of the foregoing conduct of Defendants, the United States and lenders acting on behalf of the United States made payments under mistake of fact.

67. As a result of these payments made by the United States and lenders acting on behalf of the United States under mistake of fact, the United States has sustained damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

14

WHEREFORE, the United States demands judgment in its favor and against Defendants as follows:

I.    On Count I under the False Claims Act, for the amount of the United States' damages to be established at trial, trebled as required by law, and such civil penalties as are authorized by law, and all such further relief the Court deems just and proper.

II.   On Count II under the False Claims Act, for the amount of the United States' damages to be established at trial, trebled as required by law, and such civil penalties as are authorized by law, and all such further relief the Court deems just and proper.

III.  On Count III under the False Claims Act, for the amount of the United States' damages to be established at trial, trebled as required by law, and such civil penalties as are authorized by law, and all such further relief the Court deems just and proper.

IV.   On Count IV for unjust enrichment, for the amounts by which Defendants were unjustly enriched, plus interest, costs, expenses, and for all such further relief as may be just and proper.

V.    On Count V for payment by mistake, for the amount of the United States paid by mistake, plus interest, costs, and expenses, and for all such further relief as may be just and proper.

### **DEMAND FOR JURY TRIAL**

The United States demands a jury trial in this case.

Respectfully submitted this 28th day of August, 2024

15

| | |
|---|---|
| BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br><br>*/s/ Jared S. Wiesner*<br>JAMIE ANN YAVELBERG<br>COLIN M. HUNTLEY<br>JARED S. WIESNER<br>Attorneys, Civil Division<br>United States Department of Justice | E. MARTIN ESTRADA<br>United States Attorney<br><br>*/s/ Frank D. Kortum*<br>DAVID M. HARRIS<br>ROSS M. CUFF<br>FRANK D. KORTUM<br>Attorneys, United States Attorney's Office<br>Central District of California |

16

## PROOF OF SERVICE ELECTRONIC MAIL

I am over the age of 18 and not a party to the within action. I am employed by the Office of United States Attorney, Central District of California. My business address is 300 North Los Angeles Street, Suite 7516, Los Angeles, California 90012.

On <u>August 28, 2024</u>, I e-mailed a copy of **UNITED STATES' COMPLAINT IN INTERVENTION** to:

jbq.esq@gmail.com – Bryan Quesenberry

rar@lawsdr.com – Richard A. Rodgers

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 28, 2024 at Los Angeles, California.

_____
CONNIE HOM