BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General, Civil Division
E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS, AUSA
Chief, Civil Division
ROSS M. CUFF, AUSA
Chief, Civil Fraud Section
FRANK D. KORTUM, AUSA
California State Bar No. 110984
     Room 7516, Federal Building
     300 North Los Angeles Street
     Los Angeles, California 90012
     Tel: (213) 894-6841; Fax: (213) 894-7819
     E-mail:  frank.kortum@usdoj.gov
JAMIE ANN YAVELBERG
COLIN M. HUNTLEY
JARED S. WIESNER
PADEN GALLAGHER
Attorneys, Civil Division
United States Department of Justice
     P.O. Box 261, Ben Franklin Station
     Washington, D.C. 20044
     Tel: (202) 353-1274
     Fax: (202) 616-3085
     Email: Jared.S.Wiesner2@usdoj.gov
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* BRYAN QUESENBERRY,<br><br>    Plaintiff,<br><br>    v.<br><br>JMG INVESTMENTS, INC., and JEFFREY SCHWARTZ<br><br>    Defendant. | No. 2:20−cv−08497−MWF−AS<br><br>JOINT RULE 26(f) REPORT<br><br>**Date:      December 16, 2024**<br>**Time:      11:00 A.M.**<br>**Courtroom:  5A** |

1

### JOINT RULE 26(f) REPORT

2    Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1,

3 and the Order Setting Scheduling Conference issued on November 13, 2024 (Dkt. 54),

4 Plaintiff United States of America ("United States") and Defendants JMG Investments,

5 Inc. ("JMG") and Jeffrey Schwartz ("Schwartz") submit this Joint Rule 26(f) Report.

6    The submission of this Joint Report follows the conference of the Parties' counsel

7 held on November 25, 2024.

8  **A. STATEMENT OF THE CASE**

9    This is a *qui tam* action, in which the United States of America ("United States")

10 has intervened, for damages and statutory penalties under the False Claims Act ("FCA"),

11 31 U.S.C. §§ 3729 *et seq.*, and the common law, including equitable theories of unjust

12 enrichment and payment by mistake.  The United States alleges that JMG and its owner,

13 Schwartz, (1) made false or fraudulent statements to improperly obtain a second,

14 duplicate Paycheck Protection Program ("PPP") loan prior to December 31, 2020,

15 despite the fact that under the Coronavirus Aid, Relief, and Economic Security Act

16 ("CARES ACT") (Pub. L. 116-136), they were permitted to receive only one PPP loan

17 prior to December 31, 2020; and (2) knowingly and improperly avoided an obligation to

18 repay the duplicate PPP loan.  JMG and Schwartz deny the forgoing allegations.

19    The CARES Act was enacted to provide emergency assistance and health care

20 response for individuals, families, and businesses affected by the Coronavirus Disease

21 2019 ("COVID-19") pandemic.  The CARES Act, inter alia, temporarily permitted the

22 Small Business Administration ("SBA") to fully guarantee 100 percent of loans made by

23 participating lenders under the PPP and further provided forgiveness of up to the full

24 principal amount of qualifying loans guaranteed under the PPP.  To help ensure that as

25 many eligible borrowers as possible could obtain PPP loans, an Interim Final Rule issued

26 by SBA allowed borrowers to receive only one PPP loan during 2020, and regulations

27 governing PPP loans required eligible borrowers to certify that they did not have

28 applications pending for duplicative loans and that they had not and would not receive a

second loan under the PPP prior to December 31, 2020.

The United States alleges that Schwartz signed, and JMG submitted, a PPP loan application on or about April 8, 2020 for $505,987, which was approved and funded on or about May 15, 2020.  Shortly after submitting their first loan application, Schwartz signed, and JMG submitted, a second PPP loan application on or about May 7, 2020 for $501,588, which was approved and funded on or about May 22, 2020.  The SBA additionally paid $15,047 in processing fees in connection with providing that loan.  As part of that loan application, Schwartz was required to certify that JMG had not received and would not receive another PPP loan in 2020.  However, Defendants neither withdrew their second loan application after receiving disbursement of their first PPP loan nor returned the funds from the second PPP loan; instead, Defendants retained and spent the funds from the duplicate PPP loan.  On or about February 9, 2021, the SBA forgave Defendants' first PPP loan, and on or about July 19, 2021, Defendants applied for loan forgiveness on the duplicate PPP loan.  In applying for loan forgiveness on the duplicate loan, Defendants falsely represented, expressly or impliedly, that they were eligible for the duplicate loan, followed all PPP rules, and were eligible for loan forgiveness.  SBA ultimately paid the lender the full amount of the duplicate loan, sustaining a total loss of $516,635, inclusive of processing fees.

Had the United States been aware of the alleged falsity of Defendants' certifications, it never would have disbursed, guaranteed, or ultimately purchased and forgave Defendants' second PPP loan.  Accordingly, the United States claims that Defendants are liable for damages and statutory penalties under the FCA, or, in the alternative, under common law and equitable theories of unjust enrichment and payment by mistake.

## B. <u>SUBJECT MATTER JURISDICTION</u>

This Court has subject matter jurisdiction over the United States' claims brought under the FCA, 31 U.S.C. §§ 3279, *et seq.*, pursuant to 31 U.S.C. §§ 3730 and 3732. The Parties further agree that this Court has supplemental jurisdiction to entertain the

2

common law and equitable causes of action under 28 U.S.C. § 1367(a).

## C. **LEGAL ISSUES**

1. Whether Defendants' Allegedly False Certifications and Receipt of a
   Second PPP Loan Violates the False Claims Act

   a. *United States' Position*

The FCA imposes civil liability on anyone who "'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval,' or 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'" *Winter ex rel. U.S. v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1114 (9th Cir. 2020) (citation and quotation marks omitted). Liability also lies where someone "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). The United States alleges that Defendants are liable under each of those theories.

The United States alleges that Defendants falsely certified that they would not receive two PPP loans in 2020 despite applying for and retaining two PPP loans and that the SBA would not have disbursed the second PPP loan to Defendants had it been aware of the falsity of Defendants' certifications. (United States' Complaint in Intervention ("Compl."), Dkt. No. 41 ¶¶ 24-31, 35.) After receipt of the duplicate PPP loan, Defendants knowingly and improperly avoided an obligation to repay the duplicate PPP loan. (Compl. ¶¶ 38-41.) Defendants also improperly both applied for and obtained forgiveness on the second PPP loan, again falsely certifying compliance with the PPP rules and regulations. (Compl. ¶¶ 38-40.) Defendants engaged in this conduct and made these false certifications despite knowing that they were ineligible to receive or retain a second PPP loan in 2020. As Defendant Schwartz admitted under oath in response to a Civil Investigative Demand: "Well, I knew – I knew that I was – I was only supposed to get one PPP loan." (Compl. ¶ 36.) Accordingly, the United States contends that Defendants' actions give rise to liability under the FCA.

### b. Defendants' Position

Defendant Schwartz denies that he knowingly made any false statements and avers that at all times he had the honest opinion that the representations made in the PPP loan applications were true and if any representation was false, it was the result of an honest mistake, inadvertence or mere negligence.

2. <u>Whether Defendants' Retention of a Second PPP Loan Secured Through Their Allegedly False Certifications is Unjust</u>

### a. United States' Position

In the alternative, the United States argues that Defendants must repay the fraudulently obtained second PPP loan under a theory of unjust enrichment. To make a claim for unjust enrichment, a plaintiff must show the "receipt of a benefit and unjust retention of the benefit at the expense of another." *United States v. Bourseau*, No. 03CV907 BEN (WMC), 2005 WL 8169208, at *7 (S.D. Cal. Nov. 2, 2005). As explained in the Complaint, the CARES Act was enacted to provide emergency assistance and health care response for individuals, families, and businesses affected by the COVID-19 pandemic and authorized the SBA to provide businesses with PPP loans to further those goals. (Compl. ¶ 10.) Further, to help ensure that as many eligible borrowers as possible could obtain PPP loans and to help advance Congress' goal of keeping workers paid and employed across the United States, an Interim Final Rule issued by SBA allowed borrowers to receive only one PPP loan during 2020. *See* Small Business Administration Interim Final Rule, 85 Fed. Reg. 20811, 20813 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

Defendants' fraudulent obtaining and retention of a second PPP loan is unjust under these circumstances. As explained above, Defendants were aware that they were only entitled to obtain a single PPP loan in 2020—just as every PPP applicant was—yet they falsely certified compliance with the applicable rules and regulations to obtain and retain a second, improper PPP loan. (Compl. ¶¶ 24-41.) Accordingly, any retention of the benefits of the second PPP loan would be unjust, both in awarding Defendants'

fraudulent certifications and in allowing them to retain a benefit to which they, like everyone in the United States, were not entitled.

        *b.  Defendants' Position*

      Defendant Schwartz denies that he knowingly made any false statements and avers that at all times he had the honest opinion that the representations made in the PPP loan applications were true and if any representation was false, it was the result of an honest mistake, inadvertence or mere negligence.

      Defendant Schwartz also denies retaining any benefit from the second PPP loan in that the loan proceeds were used exactly as intended under the CARES Act - to provide emergency assistance and health care response for individuals, families, and businesses affected by the COVID-19 pandemic.  Defendants Schwartz and JMG used the loan proceeds solely to meet payroll for approximately 60 employees and other legitimate and necessary operating expenses as mandated by the Small Business Administration ("SBA")

      3. <u>Whether the United States' Agents Disbursed and Forgave the Second PPP Loan Based Upon Mistaken or Erroneous Understandings of Material Fact</u>

        *a.  United States' Position*

      "The United States may recover payments made under an erroneous belief that was material to the decision to pay, even if the payments were innocently received," under a cause of action for payment by mistake.  *United States ex rel. Humane Soc'y of the United States v. Westland/Hallmark Meat Co.*, No. EDCV0800221VAPOPX, 2010 WL 11464786, at *12 (C.D. Cal. Aug. 5, 2010).  As explained above and in its Complaint, the United States would not have paid or forgiven Defendants' second PPP loan had it been aware of the falsity of Defendants' certifications.  Accordingly, because Defendants received federal monies based upon a mistaken or erroneous understanding of material facts, the United States argues in the alternative that it should be allowed to recover the monies Defendants improperly obtained under a theory of payment by mistake.

*b. Defendants' Position*

Defendants JMG and Schwartz do not assert any right to retain the proceeds of the Second PPP loan and have made multiple offers to repay the loan.

This action could have been resolved years ago if the SBA had notified Defendants that the Second PPP loan was made by mistake and demanded repayment. Instead, the SBA forgave the loan without notice to Defendants in contravention of their own internal rules, Standard Operating Procedures ("SOP"), requiring the SBA send a letter to the borrower giving the borrower 60 calendar days to either pay the loan in full or negotiate an acceptable payment plan.

The SBA did not give any notice or demand letter to Defendants of any issues.

Defendants JMG and Schwartz are willing and able to rectify the mistake by repaying the loan amount and related costs incurred by the SBA.

**D. <u>PARTIES, EVIDENCE, ETC.</u>**

1. <u>The Parties</u>

The Parties to this case are the United States of America, as Plaintiff, and JMG Investments, Inc., and Jeffrey Schwartz as Defendants.

The United States does not have any subsidiaries or corporate parents.

Defendant JMG Investments, Inc. does not have any subsidiaries or corporate parents. Defendant JMG Investments, Inc. has the following affiliates, which are 100% owned by Defendant Jeffrey Schwartz: Health Care Advocacy; Malibu Physician's Billing Group; and JMG Recovery, Inc. (terminated November 5, 2024).

2. <u>Percipient Witnesses</u>

At this time, the Parties believe that the key percipient witnesses, subject to change as discovery progresses, are Schwartz, JMG's 30(b)(6) witnesses, and Lori Grieder, who assisted Schwartz and JMG with the duplicate PPP loan. The parties also expect key witnesses to include personnel at the bank which processed Defendants' duplicate PPP loan application who may have been involved in the application and approval processes for that loan.

### 3. Key Documents

At this time, the Parties believe that the key documents include, subject to change as discovery progresses, Defendants' PPP loan applications, Defendants' PPP loan forgiveness applications, Defendants' communications with lenders regarding their PPP loans, Defendants' communications with third-party financial and other professionals regarding their PPP loan applications, and documents related to Defendants' retention and spending of the monies obtained through the at-issue PPP loans, including payroll records.

### E. DAMAGES

The FCA provides for a recovery of three times the damages sustained by the United States, plus a civil penalty for each violation. 31 U.S.C. § 3729(a)(1). Pursuant to the Bipartisan Budget Act of 2015, all civil statutory penalties, including those set forth in the FCA, are required to be adjusted annually for inflation. *See* Pub. Law. No. 114-74, § 701, 129 Stat. 584, 599. At this time, FCA penalties assessed after February 12, 2024, whose associated violations occurred after November 2, 2015, are no less than $13,946 and no more than $27,894 for each violation. *See* 28 C.F.R. § 85.5 (Adjustments to penalties for violations occurring after November 2, 2015).

Accordingly, the United States' damages could total $1,549,905, which is equal to three times the second loan amount and processing fees, plus additional civil penalties for each FCA violation for which Defendants are found liable.

Defendants contend that the damages claimed are untethered to reality, unjustified and amount to an unconstitutional penalty. Moreover, Defendant JMG lost approximately $800,000 in 2023 and is on the same loss track for 2024. The restitution offered by Defendant Schwartz will have to come from sale of property.

### F. INSURANCE

The Parties are currently unaware of any insurance coverage for the claims in this case.

7

### G. **MOTIONS**

The United States does not anticipate the need to add parties or transfer venue but may move for leave to amend its Complaint if needed as discovery progresses.  The United States anticipates moving for full or partial summary judgment after the close of discovery.

Defendants do not anticipate the need to add any parties, transfer venue or bring any motions, other than a possible Motion for Summary Adjudication of Issues under FRCP Rule 56.  Defendants request a jury trial.

### H. **MANUAL FOR COMPLEX LITIGATION**

The Parties do not anticipate the need to utilize any procedures from the Manual for Complex Litigation in this case.

### I.  **STATUS OF DISCOVERY**

The United States and Defendants will provide one another with initial disclosures by December 9, 2024.

### J.  **DISCOVERY PLAN**

The Parties intend to utilize all forms of discovery allowed under the Federal Rules of Civil Procedure.  At this time, the Parties do not anticipate that modifications of the discovery limitations set forth in the Federal Rules of Civil Procedure are necessary. However, each party reserves the right to request such modification as discovery progresses.  The Parties further do not believe discovery need be conducted in phases or otherwise limited.

The United States' anticipated areas of discovery include:

   i.    Any documents or information related to the ownership structure of Defendant JMG and Defendant Schwartz's ownership of Defendant JMG.

   ii.    Any documents and information relevant to Defendant JMG's operations.

   iii.    Any documents or information relevant to the JMG and Schwartz's finances, wealth, bookkeeping, accounting, assets, and liabilities.

   iv.    Any documents or information relevant to Defendants' submission of their

8

first PPP loan application, including any documents or information relevant to
Defendants' knowledge of the falsity of their certifications in their loan application and
ineligibility to receive a second PPP loan prior to December 31, 2020.

      v.    Any documents or information relevant to Defendants' submission of their
second PPP loan application, including any documents or information relevant to
Defendants' knowledge of the falsity of their certifications in their loan application and
ineligibility to receive a second PPP loan prior to December 31, 2020.

      vi.    Any documents or information relevant to Defendants' applications for loan
forgiveness, including any documents or information relevant to Defendants' knowledge
of their ineligibility to receive forgiveness for both PPP loans.

      vii.    Any documents or information relevant to Defendants' discussions with
accountants or other financial professionals that Defendants consulted regarding
Defendants' PPP loan applications, forgiveness applications, and eligibility or
ineligibility to receive PPP loans.

      viii.    Any documents or information relevant to Defendants' retention and
spending of the funds obtained from the United States government through the PPP,
including Defendants' business plans and projections.

      ix.    Any documents or information relevant to the application and processing of
Defendants' second PPP loan by the bank who processed that loan.

      x.    Internal or third-party complaints, audits, investigations, or inquiries
regarding any facts alleged in the Complaint.

      xi.    The identities of all employees and third parties with material information
relevant to the allegations in the Complaint.

      xii.    Any documents or information related to the defenses asserted in
Defendants' Answer.

      xiii.    Any other areas which become necessary to explore as the discovery
process unfolds.

      Defendants' anticipated area of discovery includes:

9

(i)     Documents and information from Bryan Quesenberry, plaintiff and relator.

(ii)    Documents and information from persons most knowledgeable about the subject PPP loan at the Small Business Administration.

(iii)   Documents and information from persons most knowledgeable about the subject PPP loan at Fountainhead Lender.

(iv)   Lori Greider, loan broker.

**K. <u>DISCOVERY CUT-OFF</u>**

Please see Exhibit A attached hereto.

**L.  <u>EXPERT DISCOVERY</u>**

Please see Exhibit A attached hereto.

**M. <u>DISPOSITIVE MOTIONS</u>**

The United States believes that all its claims may be determined by a motion for summary judgment.

Defendants believe that the United States actions under the False Claims Act's *qui tam* provisions (31 U.S.C. § 3729-3733) may be determined to be unconstitutional by a motion for summary adjudication of issues.

**N. <u>SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION (ADR)</u>**

The Parties engaged in settlement discussions during the United States' investigation into Defendants' alleged fraud.  However, the Parties were unable to reach an agreeable settlement, prompting the United States' intervention and Complaint.

The Parties have committed to continuing settlement discussions and request that the Court assign a Magistrate Judge to facilitate further discussions.

**O. <u>TRIAL ESTIMATE</u>**

The United States estimates that its case in chief will require 2 days.  The United States currently anticipates calling at least three witnesses.  However, if additional witnesses are identified in discovery, the United States case in chief may be longer.

Defendants request a jury trial and anticipate calling at least three witnesses.

Accordingly, the Parties anticipate an estimated trial length of 7 days.

10

**P. <u>TRIAL COUNSEL</u>**

For the United States, trial counsel are:

      Jared S. Wiesner (D.C. Bar No. 976856)

      Frank D. Kortum (SBN #110984)

      Paden Gallagher (D.C. Bar No. 1735394)

For Defendants, trial counsel are:

      Richard A Rodgers (SBN #210196)

      John Wylie (Florida Bar. No. 133817)

**Q. <u>INDEPENDENT EXPERT OR MASTER</u>**

The Parties agree that there is no need for an independent expert or master.

**R. <u>TIMETABLE</u>**

Please see Exhibit A attached hereto.

/ / /

/ / /

/ / /

1    ## S.  OTHER ISSUES

2       The Parties do not anticipate any other issues requiring the Court's attention at this

3    time.

4

5                                         Respectfully submitted,

6

7    Dated:  12/2/2024                    BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General, Civil
                                          Division
8                                         E. MARTIN ESTRADA
                                          United States Attorney
9                                         DAVID M. HARRIS
                                          Assistant United States Attorney
10                                        Chief, Civil Division
                                          ROSS M. CUFF
11                                        Assistant United States Attorney
                                          Chief, Civil Fraud Section
12                                        JAMIE ANN YAVELBERG
                                          COLIN M. HUNTLEY
13                                        JARED S. WIESNER
                                          PADEN GALLAGHER
14                                        Attorneys, Civil Division

15

16                                        */s/ Frank D. Kortum*
                                          FRANK D. KORTUM
17                                        Assistant United States Attorney
                                          Attorneys for the United States of America
18

19                                        SHANE DIGIUSEPPE & RODGERS LLP
20    Dated:  11/26/2024

21

22                                        Richard A. Rodgers
                                          Attorneys for JMG Investments Inc,
23                                        and Jeffrey Schwartz

24

25

26

27

28

                                          12