UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-8497-MWF (ASx)                                     Date:  January 14, 2026
Title:  United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT [75]

Before the Court is the United States' Motion for Summary Judgment (the "Motion"), filed on November 17, 2025. (Docket No. 75). Defendants JMG Investments, Inc., and Jeffrey Schwartz filed an Opposition on December 2, 2025. (Docket No. 78). The Government filed a Reply on December 15, 2025. (Docket No. 80).

The Court has read and considered the papers on the Motion and held a hearing on **January 12, 2026**.

The Motion is **GRANTED.** The Government is entitled to its full measure of requested damages on the reverse False Claims Act ("FCA") claim.

## I.   BACKGROUND

### A.   Procedural Background

Relator Bryan Quesenberry filed this *qui tam* lawsuit against Defendants, among others, on September 10, 2020. (*See* Docket No. 1). On May 30, 2024, the Government elected to intervene in part as to Relator's allegations against JMG Investments, Inc., and Allstar Health Providers, Inc. (Docket No. 38). Relator further stipulated to dismissal without prejudice as to those defendants for whom the United States declined to intervene. (*Id.*). On November 7, 2024, Defendant Allstar was dismissed from the case via stipulation of the parties. (Docket No. 50).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-8497-MWF (ASx)            Date:  January 14, 2026
Title:  United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

On August 28, 2024, the Government filed its Intervenor Complaint against JMG.  (Docket No. 41 (the "Complaint")).  The Complaint alleges the following claims: Count 1, violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A); Count II, violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B); Count III, violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G); Count IV, unjust enrichment; and Count V, payment by mistake.  (Complaint ¶¶ 42-67).

**B.**    <u>**Factual Background**</u>

The following facts are based on the evidence, as viewed in the light most favorable to Defendants as the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (On a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his [her, or its] favor.").

The Paycheck Protection Program ("PPP") was launched on April 3, 2020, in response to the COVID-19 pandemic.  (Statement of Undisputed Facts (Docket No. 80-1) ¶ 1).  In order to receive a PPP loan, a qualifying business, through its authorized representative, signed and submitted a PPP loan application to the lender with delegated authority from the Small Business Administration ("SBA").  (*Id.* ¶ 2).

Defendant Jeffrey Schwartz is the sole owner of Defendant JMG Investments ("JMG").  (*Id.* ¶ 6).  On or about April 8, 2020, JMG submitted a PPP application to lender Bank of America seeking a PPP loan (the "Bank of America Application"), which Schwartz digitally signed.  (*Id.* ¶ 8, 10).  When he submitted the Bank of America Application, Defendant Schwartz read and certified the following statement:

"During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-8497-MWF (ASx)              **Date:** January 14, 2026
**Title:** United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

(*Id.* ¶¶ 11, 12). Next, on May 7, 2020, JMG submitted a PPP Application to lender Fountainhead SBF LLC (the "Fountainhead Application") seeking a PPP loan. (*Id.* ¶ 13). In connection with the Fountainhead Application, Schwartz read and signed the same certification that he "has not and will not receive another loan under the Paycheck Protection Program." (*Id.* ¶¶ 16, 17).

On May 8, 2020, an agent acting as a broker for Fountainhead emailed Schwartz that he had a loan number and would receive follow-up requests for documents. (*Id.* ¶ 24). When he received that email, Schwartz understood this to mean that the Fountainhead Application had gone through. (*Id.* ¶ 25). Schwartz did not withdraw his Bank of America Application at this time. (*Id.* ¶ 26). On May 12, 2020, Schwartz then received an email from Fountainhead that his PPP loan was approved with the SBA, and Fountainhead requested he prepare documents for closing. (*Id.* ¶ 27). Again, Schwartz did not withdraw his Bank of America Application. (*Id.* ¶ 28). And finally, on May 14, 2020, Schwartz sent the closing documents and wiring instructions to Fountainhead, and again, he did not withdraw the Bank of America Application. (*Id.* ¶ 29-31).

The day after sending the closing documents on the Fountainhead loan, on May 15, 2020, Schwartz signed a promissory note to receive the Bank of America loan. (*Id.* ¶ 31). That very same day, JMG received the loan funds from Bank of America. (*Id.* ¶ 33). Despite receiving these funds, JMG did not withdraw its Fountainhead Application. (*Id.* ¶ 34). JMG then used the funds from the disbursed Bank of America loan to pay payroll, all while the Fountainhead Application was still pending. (*Id.* ¶ 37).

While Schwartz knew JMG had received one PPP loan from Bank of America, he continued working with Fountainhead to obtain another loan from it after May 15, 2020. (*See* SUF ¶¶ 39, 40-47). Indeed, on May 22, 2020, JMG received the proceeds of the PPP loan from Fountainhead in an amount of $501,588. (*Id.* ¶ 46).

On June 8, 2020, Schwartz emailed a broker working with Fountainhead, Lori Grieder, stating that he was "extremely surprised" to have received the funds from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-8497-MWF (ASx)             Date: January 14, 2026
Title: United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

Fountainhead since he had already received funds from Bank of America. (*Id.* ¶ 51). He also acknowledged in that email that he may be "forced to pay that loan back to the SBA." (*Id.*). At his deposition, Schwartz testified that when he emailed on June 8, 2020, he knew that he was "only supposed to get one PPP loan." (*Id.* ¶ 52).

Despite his knowledge that he was not supposed to receive the second loan, Defendants applied for forgiveness on both loans. (*Id.* ¶ 56). Schwartz applied for forgiveness as to the Bank of America loan in November 2020, and it was forgiven in February 2021. (*Id.* ¶¶ 57-58). He then applied for forgiveness on the Fountainhead loan at some point before July 19, 2021, and the forgiveness was denied. (*Id.* ¶ 61). On July 19, 2021, Schwartz applied for forgiveness on the Fountainhead loan again. (*Id.* ¶ 60).

On April 20, 2022, Schwartz was told by Fountainhead that the loan would not be forgiven and Defendants would need to repay the funds. (*Id.* ¶ 63). At some point, Fountainhead charged off the loan to the SBA instead of forgiving the loan. (*Id.* ¶ 66). After SBA purchased the loan, Fountainhead submitted the forgiveness application submitted by JMG on July 19, 2021. (*Id.* ¶ 67). The SBA applied its automated review process, and reclassified the loan to forgiven. (*Id.*). If the SBA had known that Defendant JMG had already received a loan, it would not have forgiven the loan. (*Id.* ¶ 69). Moreover, Schwartz testified at his deposition that he "knew that if Fountainhead charged off that loan, [he] would then have an obligation to repay those loan funds to the [G]overnment." (*Id.* ¶ 70).

To date, Defendants have not paid back the Fountainhead loan. (*Id.* ¶ 71).

## II.     EVIDENTIARY OBJECTIONS

Before summarizing the factual background of this action, the Court notes that Defendants have lodged certain evidentiary objections in responding to the Government's Statement of Undisputed Facts. (Response to Statement of Undisputed Facts ("RSUF") (Docket No. 80-1) ¶¶ 10; 18). The two disputed facts and objections are as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-8497-MWF (ASx)            Date: January 14, 2026
Title: United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

- "Defendant Schwartz digitally signed the PPP Application that was submitted to Bank of America on behalf of Defendant JMG." (RSUF ¶ 10). Defendants object that the document evidencing Schwartz's putative signature is inadmissible hearsay, not authenticated, and irrelevant. (*Id.*).

- "The Application Form 2483 which Defendant Schwartz signed and submitted to Fountainhead on behalf of Defendant JMG contained the following statement: 'I certify that: I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.'" (*Id.* ¶ 18). Defendants object that the exhibit evidencing this fact is hearsay and not authenticated. (*Id.*).

On a motion for summary judgment, the Court is concerned only with the ultimate admissibility of the relevant facts at trial, and not the form of these facts as presented on the motion. *See Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) ("[A]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." (citations omitted)). Where "the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.* (citations omitted).

Nowhere does Schwartz dispute that he did not submit the Applications or did not make the relevant certifications as to the Applications, rather, he only objects to the form of the evidence. Therefore, as to all of these objections, Schwartz could easily be called upon to testify to these facts at trial. Accordingly, to the extent the Court relies upon evidence to which Defendants object, these objections are **OVERRULED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-8497-MWF (ASx)           Date: January 14, 2026
Title: United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

## III. LEGAL STANDARD

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the moving party bears the burden of proof at trial:

> When the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case. Once the moving party comes forward with sufficient evidence, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

"A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249-50.

## IV. DISCUSSION

As is plain from the briefing, this Motion for Summary Judgment presents a somewhat unusual situation. While the Government moves for summary judgment on each claim in the Complaint, the Defendants fail to oppose — or indeed, even discuss — the vast majority of the substantive arguments in the Motion. The sole issue on which Defendants chose to oppose the Motion is whether the Government has proven its case as to the scienter element of its two FCA claims. (*See generally* Opp.).

While the failure to oppose a motion can sometimes be a basis for denial, the Ninth Circuit has held that the failure to file an opposition cannot be the sole basis for granting a summary judgment motion pursuant to Rule 56. *See Heinemann v. Satterberg,* 731 F.3d 914, 916-17 (9th Cir. 2013); *see also* L.R. 7-12. Accordingly, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-8497-MWF (ASx)                          Date:  January 14, 2026
Title:  United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

to the unopposed facts and arguments, the Court will apply the standard from *C.A.R.* to determine first whether the Government has come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial.  *See* 213 F.3d at 480.  Because Defendants do not present any contrary evidence, and thus do not create any genuine dispute of material fact, if the Government's evidence is sufficient under the first step, the Motion will be granted as to those unopposed claims.

### A.     Counts IV & V: Common Law Claims

First, the Government moves for summary judgment on Count IV, unjust enrichment, and Count V, payment by mistake.  (Motion at 8-10).  While these are alternative theories of recovery and thus are not ultimately be relevant to the final damages awarded here, the Court will still address Defendants' liability under these claims.

The Court will first address Count V.  As recounted by the Motion, payment by mistake is an "alternative theory of recovery … available to the United States and is independent of statute."  (Motion at 8-9); *see U.S. v. Mead,* 426 F.2d 118, 124 (9th Cir. 1970).  "The Government by appropriate action can recover funds which its agents have wrongfully, erroneously or illegally paid. … If the [G]overnment made these payments under an erroneous belief which was material to the decision to pay, it is entitled to recover the payments."  *Id.*  The *Mead* court confirmed that "[k]nowledge of falsity is not a requisite for recovery under the mistake doctrine."  *Id.* at 125, n.6.  Because knowledge of falsity is not required to prove payment by mistake, the arguments made in Defendants' Opposition are inapposite to this claim.

The Government argues that it paid Defendants both the Bank of America and Fountainhead Loans under the erroneous belief that JMG would only receive one loan in 2020.  (Motion at 9).  And this mistaken belief was indeed caused by Defendants' representation in their two loan applications that they would only receive one PPP loan in 2020.  (SUF ¶¶ 4-5, 16).  Because the SBA would not have forgiven the Fountainhead Loan if it had known that JMG had already received the Bank of America Loan, the Government clearly made this payment to JMG under an erroneous

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-8497-MWF (ASx)                                    Date:  January 14, 2026
Title:  United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

belief that was material to the decision to pay.  *See Mead,* 426 F.2d at 124. Accordingly, the Government is entitled to summary judgment on its payment by mistake claim.

The Government is also entitled to summary judgment on its unjust enrichment claim.  "[F]ederal common law supports reimbursement of federal monies improperly paid pursuant to federal programs" under an unjust enrichment theory, rather than state law.  *See U.S. v. Bellecci,* 2008 WL 802367 (collecting cases).  Defendant recounts the elements of unjust enrichment under the federal common law as "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust."  *United States ex rel. Landis v. Tailwind Sports Corp.,* 234 F. Supp. 3d 180, 205 (D.D.C. 2017).  Disposition under these elements is quite straightforward given that Defendants have not disputed that they are not entitled to the money conferred to them as a result of the Fountainhead Loan, and have reiterated that they are "ready, willing and able to rectify the mistake by paying the Fountainhead loan ($501,588.00, plus interest) plus the related processing fees of $15,047.46."  (*See* RSUF (Docket No. 80-1) ¶¶ 67, 72). Accordingly, given these admissions, the Court agrees with the Government that it is entitled to summary judgment on this claim.  (*See* Reply at 2).

### B.     Count III: Reverse FCA Claim

31 U.S.C. § 3729(a)(1)(G) provides that a defendant is liable if they "knowingly conceal[] or knowingly and improperly avoid[] or decrease[] an obligation to pay or transmit money or property to the Government."  As the Government asserts, this is known as the "reverse false claim" provision of the FCA.  (*See* Motion at 18); *see United States ex rel. Anita Silingo v. WellPoint, Inc.,* 904 F.3d 667, 676 (9th Cir. 2018).

As stated by the Ninth Circuit in *Silingo*, this provision "is designed to cover Government money or property that is knowingly retained by a person even though they have no right to it."  *Id.*  Accordingly, while scienter is an element of this claim, the Government is correct that Defendants have not disputed any material facts about

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-8497-MWF (ASx)                                    Date:  January 14, 2026
Title:  United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

Schwartz's scienter *after* the loan applications were made.  Rather, the Opposition only disputes whether the Government has sufficient evidence regarding Schwartz's scienter ***at the time that Schwartz signed the certification on the loan***.  (*See* Opp. at 4 (repeating that the Government "does not present any supporting factual positions showing that *at the time* Schwartz signed the PPP loan with Fountainhead (5/7/20)," he had the requisite scienter).  His Opposition is thus inapposite to the reverse FCA claim.

Because Defendants were "put on notice of a potential issue, [were] legally obligated to address it, and [did] nothing," this constitutes "avoidance" of the obligation to pay back the overpaid loan funds.  *See United States ex rel. Kane v. Healthfirst, Inc.,* 120 F. Supp. 3d 370, 394 (S.D.N.Y. 2015).  Indeed, Defendant Schwartz admitted at his deposition that he knew on June 8, 2020, that he was "only supposed to get one PPP loan," and was surprised when he received the funds from the Fountainhead Loan because he "had already received the loan from Bank of America." (SUF ¶ 52).  Moreover, as the Government argues, the statute defines an "obligation" as "the retention of any overpayment," which is plainly on point to the benefit retained by Defendants here.  *See* 31 U.S.C. § 3729(b)(3).  And finally, Schwartz has not disputed that that he was aware that the SBA would and did purchase the Fountainhead Loan, thus creating an obligation to pay back the Government.  (*See* Motion at 18-19; SUF ¶¶ 66, 70, 72; Gallagher Decl., Ex. B 77:21-24 (Schwartz deposition testimony that he "knew if Fountainhead charged off th[e] loan, [he] would then have an obligation to repay the funds to the [G]overnment.")).  Accordingly, the Government is entitled to summary judgment on the reverse false claim provision.

Importantly, as to damages, the reverse false claim provision provides that anyone who violates that section "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, [] plus 3 times the amount of damages which the Government sustains because of the act of that person.  *See* 31 U.S.C. § 3729(a)(1).  Additionally, this provision entitles the Government to "the costs of a civil action brought to recover any such penalty or damages."  *Id.* at (a)(3).  Therefore, as the Government asserts in its Reply, culpability under this provision

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-8497-MWF (ASx)                        **Date:** January 14, 2026
**Title:** United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

provides the Government with the entire measure of the damages it seeks in the action. (Reply at 3, n.1).

While the disposition of the rest of the claims thus may not add to the money damages available to the Government in this action, the Court will nevertheless address these arguments.

### C. **Counts I & II: FCA Claims**

Again, as discussed above, Defendants' entire Opposition only takes issue with one element of the FCA violations contained in Counts I and II of the Complaint: whether the Government has sufficiently demonstrated that Defendants had the requisite scienter to be liable under these FCA provisions. (*See generally* Opp.). Nevertheless, the Court will first consider whether the Government has put forth sufficient evidence to grant summary judgment on the other elements of these claims.

The Government alleges violations of two provisions of the FCA: 31 U.S.C. § 3729(a)(1)(A) and (B). Section 3729(a)(1)(A) creates liability for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," while subsection (B) creates liability for one who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]" "A cause of action under [(a)(1)(B)] is 'complementary' to one under [(a)(1)(A)] and accordingly, 'the elements for a count brought under [(a)(1)(B)] are practically identical to the requirements for a count brought under section [(a)(1)(A)]." *United States v. Honolulu Community Action Program, Inc.,* 2019 WL 4739283, at *7 (D. Haw. Sept. 27, 2019) (quoting *United States ex rel. Scott v. Pac. Architects & Eng'rs (PAE), Inc.,* 270 F. Supp. 3d 146, 154 (D.D.C. 2017).

Therefore, to prove a violation under either theory, the Government must show "(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.,* 862 F.3d 890, 899 (9th Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-8497-MWF (ASx)                                                **Date:** January 14, 2026
**Title:** United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

***False Statement, Fraudulent Course of Conduct***:  The Government first argues that this prong is satisfied by Defendants' false statements made in certifying that they "ha[ve] not and will not receive another loan under the Paycheck Protection Program." The Supreme Court has held that "false or fraudulent claims" under the statute should be defined using the "well-settled meaning of the common-law terms," which obviously includes "claims containing express falsehoods."  *See Univ. Health Servs. V. United States ex rel. Escobar,* 579 U.S. 176, 187 (2016).

The Court agrees that the certification was such an express falsehood.  While Schwartz had not yet received the Bank of America funds when he signed the certification on the Fountainhead Application, he nonetheless could not have truthfully certified that he "will not receive another loan under the Paycheck Protection Program" when he knew the Bank of America Application was pending.  Indeed, the existence of the "will not" language in conjunction with the certification that the applicant "has not" received another loan seems expressly geared at probing whether the loan applicants have another application pending.  Accordingly, the certification on the Fountainhead Application contained an express falsehood.

***Materiality:***  A statement is "material" under the FCA if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).  In *Escobar,* the Supreme Court elaborated on the "demanding" materiality standard, clarifying that "[w]hether a provision is labeled a condition of payment is relevant to but not dispositive of the materiality inquiry."  *See* 579 U.S. at 190.  The Court further explained that "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular . . . requirement" can be persuasive proof of materiality, while evidence that the Government will pay claims despite actual knowledge that requirements were violated is "very strong evidence that those requirements are not material.  *Id.* at 194-95.

Here, there can be no serious dispute that the certifications that Defendants "will not" receive another PPP loan were material to the decision to approve the loan.  It is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-8497-MWF (ASx)                              Date:  January 14, 2026
Title: United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

simply undisputed that Defendants would not have been eligible for a subsequent loan and would have been rejected for the second loan had Schwartz truthfully answered the certification.  (SUF ¶ 5).  Accordingly, the false certifications were material to the payment of funds.

*Claim:*  Under the fourth element, courts consider whether the defendant has submitted "a claim against the government fisc."  *U.S. ex rel. Hendow v. University of Phoenix,* 461 F.3d 1166, 1177 (9th Cir. 2006).  A "claim" is defined in § 3729(b)(2) as:

> "any request or demand … for money or property … that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—(I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded…"

Here, again, there is no dispute that Defendants have submitted such a "claim" against the government fisc.  An application for a PPP loan is a request to a lender for money that was 100% guaranteed by the SBA, a government agency.  (Motion at 17).  And indeed, the Ninth Circuit has affirmed when a defendant "submit[s] requests to private lenders for government-insured loans[,]" this request constitutes a "claim," no matter "how the federal bureaucracy has apportioned the statements among layers of paperwork.  All that matters is whether the false statement or course of conduct causes the government to pay out money or to forfeit moneys due."  *See Hendow,* 461 F.3d at 1177 (internal citations and quotations omitted).  Pursuant to this standard, the loan applications here were such a "claim" under the FCA.

*Scienter*:  Accordingly, the final question is whether the Government has proven scienter.  As both parties acknowledge, the Government at minimum must show there is no genuine dispute of material fact that Defendants acted in reckless disregard of the truth or falsity of the information.  *See* 31 U.S.C. § 3729(b)(1)(A)(iii).  In *United States*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-8497-MWF (ASx)            Date: January 14, 2026

Title: United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

*ex rel. Schutte v. SuperValu Inc.,* 598 U.S. 739, 751 (2023), the Supreme Court held that the mental state of "reckless disregard … captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway."

     Again, Defendants assert that the Government has not presented "any supporting factual positions showing that *at the time Schwartz signed* the PPP loan application with Fountainhead (5/7/20), he acted in *reckless disregard* of the truth or falsity of the information on the loan application." (Opp. at 4).

     As an initial matter, the Court holds that the Government has come forward with sufficient evidence to shoulder its "burden of establishing the absence of a genuine issue of fact on each issue material to its case." *See C.A.R.,* 213 F.3d at 480. Again, it is irreconcilable for Defendant Schwartz to attest to the certification on the second loan application with Fountainhead that he "will not" receive another PPP loan when he, himself, had already submitted a loan application that was pending with Bank of America. Indeed, as the Government argues, it is highly likely that Defendants' behavior surmounts even the "deliberate ignorance" threshold, which encompasses the mental state where defendants "fail[] to make simple inquiries which would alert him that false claims are being submitted." *See United States v. Bourseau,* 531 F.3d 1159, 1168 (9th Cir. 2008). Had Defendant Schwartz inquired with Bank of America on the first application, he would have certainly found out that he was to receive the loan, or at least that the application was still pending and likely to be approved soon, rather than lost or rejected out of hand without Schwartz's knowledge. It is undisputed that it was merely eight days after submitting the Fountainhead Application that Defendants signed the promissory note with Bank of America. (SUF ¶¶ 24-31).

     Accordingly, the burden shifts to the Defendants to "present significant probative evidence tending to support its claim or defense." *See C.A.R.,* 213 F.3d at 480. In the Opposition, Defendants only point to two pieces of evidence: Defendants' response to RFA 6, and Defendants' declaration submitted with the Opposition. (Opp. at 4). Neither of these documents counteract the undisputed facts relevant to scienter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-8497-MWF (ASx)                                      Date:  January 14, 2026
Title:  United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

In their response to RFA 6, Defendants "den[y] any intent to make a false certification, and state[] that at the time of submission, [JMG] acted in good faith reliance on representations and guidance from third party professionals and believed that the submission was proper…." (*See* Defendants' Separate Statement of Disputed Facts (Docket No. 79) ¶ 16). But nowhere do Defendants state with any particularity what the content of these "representations and guidance" were, or who the "third party professionals" were. Defendants simply offer no facts or testimony in support of this assertion. While the parties discuss a broker, Lori Greider, at various points in the briefing and undisputed facts, the only facts pertaining to Ms. Greider take place ***after*** Schwartz submitted both applications. (*See* Declaration of Jeffrey Schwartz (Docket No. 78-1) ("Schwartz Decl.") at 2). Accordingly, these facts do not support the notion that Defendants relied on her guidance or representations at the time Schwartz signed the Fountainhead Application.

The Schwartz Declaration is similarly unavailing in the face of the undisputed facts. Schwartz merely states in his Declaration that "[w]hen I applied for the PPP loans, I had no intention to receive more than one PPP loan that year." (*Id.* at 2). But the Government is correct that this statement, standing alone in Schwartz's Declaration, is the definition of a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, [that] is insufficient to create a genuine issue of material fact." *See Nilsson v. City of Mesa,* 503 F.3d 947, 952 n.2 (9th Cir. 2007). Schwartz quite plainly cannot escape the implications of his actions simply by asserting he "had no intention" to receive more than one loan when his actions, by definition, consisted of him seeking to receive more than one loan, *i.e.,* submitting two applications for two separate loans.

## V.    DAMAGES

As explained above, Defendants do not dispute that they are liable on the material facts relevant to the reverse FCA claim. Nor did Defendants dispute that they would be liable for damages under this claim at the hearing. Moreover, the Government only requests damages on this claim given that recovery on the other four

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-8497-MWF (ASx)            **Date:** January 14, 2026
**Title:** United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

Counts would constitute duplicative recovery. (Reply at 3, n.1). The Court thus considers damages based on the reverse FCA claim.

At the hearing, Defendants again raised no dispute as to the merits of the claims or arguments made in the Government's Motion. Rather, Defendants only argued that this Court should exercise its equitable jurisdiction to limit the amount of damages awarded in this action, asserting that the award of treble damages is not mandatory under the FCA, but discretionary. While Defendants failed to address the question of damages in any manner in their Opposition, the Court will address this argument raised for the first time at the hearing.

By statute, judgment on the reverse FCA claim entitles the Government to treble damages, civil penalties, and the costs of the action. *See* 31 U.S.C. § 3729(a)(1), (3). While Defendants insist the amount of damages is equitable, the statutory text indicates that treble damages are mandatory. *See* § 3729(a)(1) (individuals who violate the provisions in subsection (a) are "liable to the United States Government for a civil penalty … plus 3 times the amount of damages which the Government sustains because of the act of that person). And the Ninth Circuit has explained that "[t]he FCA, itself, instructs the district court to treble damages and provides the district court with limited discretion in calculating civil penalties. … 'Congress provided for treble damages and an automatic civil monetary penalty per false claim,' which 'shows that Congress believed that making a false claim to the government is a serious offense.'" *U.S. v. Bourseau,* 531 F.3d 1159, 1173 (2008) (quoting *U.S. v. Mackby*, 339 F.3d 1013, 1017-18 (9th Cir. 2003)). Accordingly, while the Court exercises its "limited discretion" in considering civil penalties, the terms of the FCA require treble damages.

The Government's Motion adequately supports that Defendants received $501,588 for the principal of the Fountainhead loan, which the SBA forgave, along with $15,407.46 in processing fees reimbursed by the SBA to Fountainhead. (Motion at 19). None of these facts are disputed by Defendants. This equates to total damages of $516,995.46, which is then trebled per the statute for a total of $1,550,986.38. (*Id.* at 20).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-8497-MWF (ASx)            **Date:** January 14, 2026

**Title:** United States, ex rel. Bryan Quesenberry v. JMG Investments, Inc., et al.

The Government further requests two civil penalties, with the current acceptable range (adjusted for inflation) between $14,308 and $28,619. (*Id.* (citing to 28 C.F.R. § 85.5)). The two violations accruing civil penalties are the materially false loan applications and the materially false forgiveness applications.

As to the putatively false forgiveness applications, the Court is not inclined to find a violation here. The undisputed facts and argument in the Motion merely demonstrate that Schwartz applied for forgiveness and was aware that he would only be eligible for forgiveness on one of the two loans. But the Government has not presented argument that any statements made in the applications for forgiveness were fraudulent — indeed, any statements made in the forgiveness applications themselves were not the focus of the briefing in the Motion on any of the Government's claims. The Government is thus entitled to one civil penalty for the violations committed on the loan application.

As to the amount of civil penalty to be awarded within the statutory range, the Court finds the minimum amount of civil penalty to be appropriate, $14,308. The Government requests no particular amount within the range and Defendants again fail to argue in their Opposition about what penalty might be appropriate. Courts exercise their discretion in awarding penalties within the statutory range and consider only principles of fairness. *See U.S. v. Eghbal,* 475 F. Supp. 2d 1008, 1018 n.14 (C.D. Cal. 2007). In consideration of fairness to the parties and in light of Defendants' admission that the second loan was received and kept in error, the Court awards the minimum statutory penalty amount.

Accordingly, the Motion is **GRANTED**. For prevailing on the reverse FCA claim, the Government is awarded damages of $1,550,986.38 and a civil penalty of $14,308.

A separate judgment shall issue.

IT IS SO ORDERED.